Slip Op. 20-74

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| LOCKHART TEXTILES INC., | |
|                 Plaintiff, | Before: Leo M. Gordon, Judge |
|      v. | |
| UNITED STATES, | Court No. 17-00099 |
|                 Defendant. | |

**OPINION**

[Denying Plaintiff's motion for summary judgment; granting Defendant's cross-motion for summary judgment.]

Dated: May 29, 2020

    John M. Peterson, Richard F. O'Neill, and Patrick B. Klein, Neville Peterson LLP of New York, NY for Plaintiff Lockhart Textiles, Inc.

    Marcella Powell, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice of New York, NY for Defendant United States. With her on the brief were Joseph H. Hunt, Assistant Attorney General, Jeanne E. Davidson, Director, and Justin R. Miller, Attorney-In-Charge. Of counsel on the brief was Paula S. Smith, Senior Attorney, Office of Assistant Chief Counsel for International Trade Litigation, U.S. Customs and Border Protection of New York, NY.

    **Gordon, Judge:** Plaintiff Lockhart Textiles, Inc. ("Lockhart") contests the decision of U.S. Customs and Border Protection ("Customs") denying Lockhart's protests of Customs' classification of the imported wearing apparel consisting of 100 percent polyester knit women's trousers ("subject merchandise") under the Harmonized Tariff Schedule of the United States ("HTSUS"). See Pl. Lockhart Textile's Stmt. of Mat. Facts not in Dispute Pursuant to USCIT Rule 56.3 ("PSOF") at ¶ 1, ECF No. 33-3; Def.'s Amend.

Resp. to Pl.'s Rule 56.3 Statement ("Def.'s Resp. to PSOF") at ¶ 1, ECF No. 40; see also Def.'s Amend. Stmt. of Mat. Facts not in Dispute Pursuant to USCIT Rule 56.3 ("DSOF"), ECF No. 40; Pl. Lockhart Textile's Resp. to Def.'s Rule 56.3 Stmt. ("Pl.'s Resp. to DSOF"), ECF No. 43. Before the court are cross-motions for summary judgment. See Pl.'s Mot. for Summ. J., ECF No. 33 ("Pl.'s MSJ"); Def.'s Cross-Mot. for Summ. J. and Opposition to Pl.'s Mot. for Summ. J., ECF No. 38 ("Def.'s XMSJ"); see also Pl.'s Reply in Supp. of Mot. for Summ. J. and Resp. to Def.'s Cross Mot. for Summ. J., ECF No. 46 ("Pl.'s Reply"); Def.'s Reply in Further Supp. of Cross Mot. for Summ. J., ECF No. 49 ("Def.'s Reply").

Customs classified the subject merchandise as "Women's or girls' suits, ensembles, suit-type jackets, blazers, dresses, skirts, divided skirts, trousers, bib and brace overalls, breeches and shorts (other than swimwear), knitted or crocheted: Trousers, bib and brace overalls, breeches and shorts: Of synthetic fibers: Other [than bib or brace overalls]: Other" under HTSUS subheading 6104.63.20, with duty at the rate of 28.2% ad valorem. Lockhart claims that the subject merchandise is properly classified as "Women's or girls' suits, ensembles, suit-type jackets, blazers, dresses, skirts, divided skirts, trousers, bib and brace overalls, breeches and shorts (other than swimwear), knitted or crocheted: Trousers, bib and brace overalls, breeches and shorts: Of other textile materials: Other" under HTSUS subheading 6104.69.80, dutiable at a rate of 5.6% ad valorem. The parties agree that proper classification of the subject merchandise (i.e., trousers of "synthetic fibers" under HTSUS subheading 6104.63.20 vs. trousers of "other textile materials" under HTSUS subheading 6104.69.80) hinges on first

determining the correct classification for the yarn used to make the subject merchandise ("Best Key Metalized Yarn" or "BKMY"). The Government maintains that BKMY is classifiable as "synthetic fibers" covered by HTSUS Chapter 54, but Lockhart contends that BKMY is properly classified as "metalized yarn" under HTSUS heading 5605. See Def.'s XMSJ at 6–9; Pl.'s MSJ at 3–6. The court has jurisdiction pursuant to 28 U.S.C. § 1581(a) (2012). For the reasons set forth below, Plaintiff's motion for summary judgment is denied, and Defendant's cross-motion for summary judgment is granted.

## I. Standard of Review

The court reviews Customs' protest decisions de novo. 28 U.S.C. § 2640(a)(1). USCIT Rule 56 permits summary judgment when "there is no genuine issue as to any material fact." USCIT R. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). In considering whether material facts are in dispute, the evidence must be considered in the light most favorable to the non-moving party, drawing all reasonable inferences in its favor. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Anderson, 477 U.S. at 261 n.2.

A classification decision involves two steps. The first step addresses the proper meaning of the relevant tariff provisions, which is a question of law. See Faus Group, Inc. v. United States, 581 F.3d 1369, 1371–72 (Fed. Cir. 2009) (citing Orlando Food Corp. v. United States, 140 F.3d 1437, 1439 (Fed. Cir. 1998)). The second step involves determining whether the merchandise at issue falls within a particular tariff provision as construed, which, when disputed, is a question of fact. Id.

While the court accords deference to Customs' classification rulings relative to their "power to persuade," United States v. Mead Corp., 533 U.S. 218, 235 (2001) (citing Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)), the court has "an independent responsibility to decide the legal issue of the proper meaning and scope of HTSUS terms." Warner-Lambert Co. v. United States, 407 F.3d 1207, 1209 (Fed. Cir. 2005) (citing Rocknel Fastener, Inc. v. United States, 267 F.3d 1354, 1358 (Fed. Cir. 2001)).

## II. Discussion

Classification disputes under the HTSUS are resolved by reference to the General Rules of Interpretation ("GRIs") and the Additional U.S. Rules of Interpretation. See Carl Zeiss, 195 F.3d at 1379. The GRIs are applied in numerical order. Id. Interpretation of the HTSUS begins with the language of the tariff headings, subheadings, their section and chapter notes, and may also be aided by the Explanatory Notes ("ENs") published by the World Customs Organization. Id. "GRI 1 is paramount. . . . The HTSUS is designed so that most classification questions can be answered by GRI 1 . . . ." Telebrands Corp. v. United States, 36 CIT ___, ___, 865 F. Supp. 2d 1277, 1280 (2012). Under GRI 1, merchandise that is described "in whole by a single classification heading or subheading" is classifiable under that heading or subheading. CamelBak Prods. LLC v. United States, 649 F.3d 1361, 1364 (Fed. Cir. 2011). If that single classification applies, the succeeding GRIs are inoperative. Mita Copystar Am. v. United States, 160 F.3d 710, 712 (Fed. Cir. 1998).

The court construes tariff terms according to their common and commercial meanings, and may rely on both its own understanding of the term as well as upon

lexicographic and scientific authorities. See Len-Ron Mfg. Co. v. United States, 334 F.3d 1304, 1309 (Fed. Cir. 2003). The court may also refer to the Explanatory Notes "accompanying a tariff subheading, which—although not controlling—provide interpretive guidance." E.T. Horn Co. v. United States, 367 F.3d 1326, 1329 (Fed. Cir. 2004) (citing Len-Ron, 334 F.3d at 1309).

At issue is HTSUS heading 5605 that covers "Metalized yarn, whether or not gimped, being textile yarn, or strip or the like of heading 5404 or 5405, combined with metal in the form of thread, strip or powder or covered with metal." Plaintiff argues that "[w]hile the technology used to produce [BKMY] is novel and in some ways revolutionary, it is clear that yarns containing any amount of metal are treated as metalized yarns for tariff purposes." Pl.'s MSJ at 6. Defendant contends that Plaintiff's proposed interpretation "contravenes the plain language of the statute." Def.'s XMSJ at 4. Instead, Defendant maintains that the plain meaning of heading 5605 provides that the heading only covers "products that are the end product of metal that was added to a yarn, strip, or the like, such as film." Id. at 11. Defendant further argues that "[t]he term 'metalized' refers to metal added to the surface of the yarn, strip, or film. It does not encompass a manufacturing process that adds metal to a polyester slurry." Id. For the reasons set forth below, the court concludes that the Government's interpretation is persuasive and that BKMY is not classifiable under HTSUS heading 5605. Accordingly, the subject merchandise is properly classified as women's trousers "of synthetic fibers" under HTSUS subheading 6104.63.20.

At the outset, the court notes that the parties' arguments are not new. Rather, the issue of classifying BKMY as "metalized yarn" or not has been the subject of at least two prior formal rulings by Customs. See Headquarters Ruling Letter HQ H202560, dated September 17, 2013 ("Revocation Ruling"), which revoked New York Ruling Letter ("NY") N187601 (Oct. 25, 2011) ("Yarn Ruling"); see also Pl.'s MSJ at 8 ("The instant trousers are made from a yarn initially developed by Hong Kong based Best Key Manufacturing Inc. Best Key Metalized Yarn is made by forming metal filament directly from the liquid phase. Metal nanopowders are combined with liquid polyester, and the mixture is ejected (extruded) through the small holes of a spinneret, forming monofilament yarns."). The Yarn Ruling classified BKMY under HTSUS heading 5605 as "metalized" yarn. The Revocation Ruling replaced the Yarn Ruling, holding that BKMY is not a metalized yarn of heading 5605 but a polyester yarn under HTSUS Chapter 54.

Customs is afforded a statutory presumption of correctness in classifying merchandise under the HTSUS, but this presumption does not apply to pure questions of law. 28 U.S.C. § 2639(a)(1); see also Universal Elecs. Inc. v. United States, 112 F. 3d 488, 492 (Fed. Cir. 1997). While the parties' dispute focuses on the proper classification of BKMY, the Government also argues that Plaintiff has not provided sufficient admissible evidence to establish that the subject merchandise is actually made from yarn that contained metal. See Def.'s XMSJ at 18–20; Def.'s Reply at 12–13 ("There is no evidence in the record establishing how and when the zinc was added, or evidence linking the yarn to the trousers at issue."). Because the court concludes that BKMY is not classifiable under heading 5605, summary judgment in favor of Defendant is appropriate as Plaintiff

does not have any legal basis for relief even drawing all factual inferences in Plaintiff's favor.

Plaintiff acknowledges that HTSUS heading 5605 "has highly specific requirements," but maintains that the BKMY used to create the subject merchandise satisfies all of the requirements to be classified as "metalized yarn." See Pl.'s MSJ at 11. Plaintiff highlights that for yarn to fall within heading 5605, it must "must first qualify as a textile yarn … of heading 5404—i.e., a [synthetic monofilament of 67 decitex or more and of which no cross-sectional dimension exceeds 1 mm.]" Id. (internal quotation marks omitted). Plaintiff further notes that "the provision not only requires that the yarn be combined with metal upon importation, but it further requires that the metal be added in a specified form—i.e., thread, strip, or powder." Id. Plaintiff argues that because BKMY is comprised of "synthetic monofilaments of 75 decitex … in which no cross-sectional dimension exceeds 1 mm," and because BKMY contains metal in the form of zinc nanopowders, BKMY thus meets all of the criteria to be properly classified under heading 5605. Id.

Defendant argues that Plaintiff ignores the limitations of the specific language used in heading 5605. See Def.'s XMSJ at 10–11, 15–17. Specifically, Defendant identifies two distinct requirements of heading 5605, namely that "a product must be (i) a 'textile yarn, or strip or the like of heading 5404 or 5405,' which is (ii) 'combined with metal in the form of thread, strip or powder or covered with metal.'" Id. at 10–11. Defendant contends that "[t]he plain meaning of these terms demonstrate that the 'metalized yarn' covered by heading 5605 refers to products that are the end product of metal that was added to a

yarn, strip, or the like, such as film. ... It does not encompass a manufacturing process that adds metal to a polyester slurry." Id. at 11; see also id. at 21 ("a metalized yarn refers to either a pre-existing yarn consisting of any textile material combined with metal, or a plastic film deposited with metal and slit into yarn, generally for decorative purposes").

Both parties rely on the ENs to HTSUS heading 5605 in support of their proposed interpretations. See Pl.'s MSJ at 11–12 (arguing that the ENs "indicate that <u>any amount of metal</u> present in a yarn (which also satisfies the above-listed requirements for classification under heading 5605) causes it to be a metalized yarn of heading 5605"); Pl.'s Reply at 7–8 ("The Explanatory Notes Do Not Constrain the Scope of Heading 5605"); Def.'s XMSJ at 12–14 ("The Notes make clear that heading 5605, HTSUS, does not cover every product combining textile material and metal or every textile yarn that contains metal."); Def.'s Reply at 8–9 ("The Explanatory Notes To Heading 5605, HTSUS, Do Not Support Lockhart's Interpretation Of That Heading"). Here, the ENs provide helpful guidance as to the limitations of the scope of heading 5605. The ENs explain that heading 5605 includes:

> (1) **Yarn consisting of any textile material (including monofilament, strip and the like and paper yarn), combined with metal thread or strip**, whether obtained by a process of twisting, cabling or by gimping, whatever the proportion of the metal present. …
>
> (2) **Yarns of any textile material (including monofilament, strip and the like and paper yarn) covered with metal by any other process**. This category includes yarn covered with metal by electro-deposition, or by giving it a coating of adhesive (e.g., gelatin) and then sprinkling it with metal powder (e.g., aluminum or bronze).

> The heading also covers products consisting of a core of metal foil (generally of aluminum), or of a core of plastic film coated with metal dust, sandwiched by means of an adhesive between two layers of plastic film.

Def.'s XMSJ at 12–13 (quoting ENs).

While Plaintiff urges the court to focus on the language in paragraph (1) that permits classification of metalized yarn regardless of "the proportion of the metal present," Lockhart ignores the context of that language and the limitations of the Heading's scope described in the ENs. The two paragraphs quoted above describe different methods by which metal may be added to pre-existing textile yarn and qualify for classification under heading 5605. Paragraph (1) specifies that when textile yarn is "combined" with "metal thread or strip," the resulting product should be classified under heading 5605 "whatever the proportion of the metal present." Paragraph (2) provides that textile yarn "covered with metal by any other process" also qualifies as metalized yarn under heading 5605. Notably, despite Plaintiff's insistence that the method of production is irrelevant to classification under heading 5605, the ENs expressly provide for different classification qualifications depending on how the product is made.

While Plaintiff emphasizes that paragraph (1) provides for classification of yarn to which metal has been added regardless of the proportion of the metal in the product, Plaintiff ignores the fact that paragraph (2) contains no such disclaimer. Problematically for Plaintiff, paragraph (1) only applies to products where textile yarn is combined with "metal thread or strip." The BKMY that Lockhart seeks to have classified under heading 5605 does not contain metal thread or strip, only zinc nanopowders. See PSOF

¶¶ 5–8; Def.'s Resp. to PSOF at ¶¶ 5–8. Plaintiff's reliance on paragraph (1) of the ENs is therefore misplaced.

Paragraph (2) also does not aid Lockhart. While applying to products created by "any other process" (i.e., those not mentioned in paragraph (1)), and not providing any limitation on the type of metal that may be added to textile yarn to be classified under heading 5605, paragraph (2) by its own terms applies to products comprised of textile yarn "covered with metal." BKMY is not "covered" with any type of metal. The trace amounts of zinc nanopowders added to a molten slurry cannot be reasonably said to "cover" the resulting yarn end-product of BKMY. See Pl.'s Reply at 5 & n.3 (acknowledging that "combine with" is broader than "cover," and citing Merriam-Webster Dictionary ("to lay or spread over something") https://merriam-webster.com/dictionary/cover (last accessed this date); and Cambridge English Dictionary ("to put or spread over something; or to lie on the surface of something") https://dictionary.cambridge.orgdictionary/english/cover?q=covered); see also Def.'s XMSJ at 14 ("Best Key's yarn is not 'covered' with metal because the metal powder is not overlaid or placed over anything, but rather mixed into slurry.").

In addition to broadly describing the types of yarn that fit within heading 5605, the ENs also specify certain types of yarn combined with metal that are not to be classified in heading 5605:

> The heading **does not include**:
>
> (a) Yarn composed of a mixture of textile materials and metal fibres conferring on them an antistatic effect (**Chapters 50 to 55**, as the case may be)

> (b) Yarn reinforced with metal thread (**heading 56.07**).
>
> (c) Cords, galloons or other articles having the character of ornamental trimmings (**heading 58.08**).
>
> (d) Wire or strip of gold, silver, copper, aluminum or other metals (**Sections XIV and XV**).

Id. at 13 (quoting ENs). The ENs make clear that heading 5605 does not cover every product combining textile material and metal or every textile yarn that contains metal.[1] Accordingly, the court concludes that the ENs do not support the Plaintiff's proposed interpretation of heading 5605.

Beyond the language of heading 5605 and its ENs, Plaintiff also argues that some of Customs' Informed Compliance Publications ("ICPs") support Lockhart's proposed interpretation of "metalized yarn." See Pl.'s MSJ at 14–15. Specifically, Lockhart cites to the ICPs "Classification: Apparel Terminology under the HTSUS" (June 2008) and "Classification of Fibers and Yarns" (Sept. 2011), to support its contention that <u>any</u> presence of metals in textile yarn would qualify the product as a metalized yarn of heading

---

[1] In its opening brief, Plaintiff argued that Note 2(A) and (B) to HTSUS Section XI requires that fabrics that are in "chief weight of metalized yarns are classified as garments of 'other' fabrics, rather than as garments of 'synthetic yarns.'" Pl.'s MSJ at 6. According to Lockhart, BKMY satisfies all of the statutory requirements for "metalized yarn" of heading 5605, HTSUS, and are of "chief weight" of that yarn. Therefore, the trousers at issue are properly classifiable as garments of "other textile materials" in subheading 6104.69.80, HTSUS. However, as Defendant pointed out in its response, Note 2 only applies to goods comprised of more than one textile material, such as yarns comprised in part of metalized yarns and part other yarns. See Def.'s XMSJ at 14–15. The trousers at issue are made with 100% of the same textile yarn. See PSOF at ¶¶ 1, 5–10; Def.'s Resp. to PSOF at ¶¶ 1, 5–10. Thus, Note 2 is not applicable to the classification of the subject merchandise. Plaintiff, perhaps recognizing this, appears to have abandoned its Note 2 argument in favor of only arguing that the trousers at issue are comprised of "metalized yarn" of heading 5605. See generally Pl.'s Reply.

5605. Id. at 14. Defendant responds that "Lockhart has taken CBP's statements out of context and overlooks their import." See Def.'s XMSJ at 23. While Defendant agrees that if "a yarn meets the statutory requirements of [heading 5605], the amount of metal contained in the yarn is not determinative," Defendant maintains that BKMY does not meet the requirements of heading 5605. Id. As Defendant explains, all of the rulings cited by Lockhart "involve yarns that met the requirements for metalized yarns of heading 5605, HTSUS, and none of those yarns involved a metal-in-the-slurry manufacturing technique." Id. None of the materials or rulings cited by Plaintiff discuss whether a product made by adding nanometals to polyester slurry results in a metalized yarn in the first instance. Accordingly, the court concludes that the ICPs and prior Customs rulings do not support Plaintiff's position.

Lastly, Plaintiff contends that heading 5605, an undisputed eo nomine tariff provision, "covers all forms of the named article," including "future-developed version of the named product if it bears an 'essential resemblance' to the goods or exemplars identified in the tariff heading." See Pl.'s MSJ at 16–17 (citing Brookside Veneers, Ltd. v. United States, 847 F.2d 786, 789 (Fed. Cir. 1988)). However, an eo nomine provision does not cover all forms when such coverage is contrary to legislative intent or when the articles are limited by the terms of the statute. See Nidec Corp. v. United States, 68 F.3d 1333, 1336 (Fed. Cir. 1995). In that instance, the provision only includes those articles embraced by the provision's language. Def's XMSJ at 10 (citing United States v. Charles R. Allen, Inc., 37 CCPA 110, C.A.D. 428 (1950), and RMS Elecs., Inc. v. United States, 83 Cust. Ct. 37, 43, 480 F. Supp. 302, 306 (1979)). Further, although heading 5605

appears to cover all forms of yarn-and-metal combinations, the language cannot be interpreted literally, because it was not, in fact, intended to cover all forms, as evident in the ENs' specific exclusion of four classes of articles from coverage (e.g., antistatic yarns). See supra pp. 10–11 (discussing products expressly excluded from heading 5605 listed by ENs). Industry sources also confirm that the commercial meaning of "metalized yarn" does not encompass every possible form of yarn with metal added, nor do they reference products like BKMY created from a polyester slurry incorporating trace amounts of metal. See Def.'s XMSJ at 11 (citing various dictionary definitions of "metalized yarn" and "metalized," none of which "refer to processes that involve metal that is added a polyester slurry"). The Government's argument that heading 5605 does not in fact cover "all forms" of yarn-and-metal combinations is persuasive; Lockhart's arguments to the contrary are not.

Lockhart's reliance on the "essential resemblance" classification analysis mentioned in Brookside Veneers is also misplaced. In Brookside Veneers, the U.S. Court of Appeals for the Federal Circuit reversed a classification decision by the Court of International Trade, holding that the plaintiff-importer's product at issue was not classifiable as "wood veneers, other" under Schedule 2, Part 1 of the (now superseded) Tariff Schedules of the United States ("TSUS"). See Brookside Veneers, 842 F.2d at 786–87. In ruling, the Court of Appeals addressed the trial court's conclusion that the product at issue should be classified as a "wood veneer" under Schedule 2, Part 1 of the TSUS because the product bore an "essential resemblance" to the articles described in the statute. Id., 842 F.2d at 789 (citing U.S. v. Standard Surplus, 667 F.2d 1011, 1014 (CCPA

1981). The court highlighted that "in headnote l(a) Congress explicitly limited the definition of sliced wood veneers to those 'sheets or strips' sliced from 'logs or flitches.'" Id., 842 F.2d at 788. After examining the definitions of "logs" and "flitches" at the time of enactment of the TSUS, the court concluded that Congress intended the tariff schedule at issue to cover only "natural logs and natural flitches." Id., 842 F.2d at 790. The court therefore concluded that "Brookside's contention that logs and flitches can reasonably be read to include the manmade blocks which it produces because these blocks bear an 'essential resemblance' to natural logs and flitches is misplaced. Brookside presented no evidence indicating that log or flitch ever referred to anything other than wood in its natural state." Id., 842 F.2d at 791. Thus, to the extent that Court of Appeals endorsed the "essential resemblance" concept in Brookside Veneers, it did so in the context of interpreting and applying the TSUS, and it refused to apply the concept where plaintiff's proposed interpretation appeared to violate Congressional intent to limit the scope of the tariff provision. Id.

Given that the dispute in this matter involves interpretation of the HTSUS, not the TSUS, the court determines that the "essential resemblance" concept discussed in Brookside Veneers is of limited relevance. See JVC Co. of Am. v. United States, 234 F.3d 1348, 1353–54 (Fed. Cir. 2000) (explaining that precedent involving tariff provisions under the TSUS is "not controlling on issues under the HTSUS"); see also Nidec Corp. v. United States, 68 F.3d 1333, 1337 (Fed. Cir. 1995) (noting that extent to which interpretative doctrine applied under TSUS may continue to apply to HTSUS was "undecided and unclear"). Plaintiff has not identified any cases applying the "essential resemblance"

concept under the HTSUS. See Pl.'s Br. at 16–17 (citing Brookside Veneers and U.S. Court of Customs and Patent Appeals cases from the 1980's). Moreover, in the cases Plaintiff relies upon, there is no discussion or analysis of how the court is to apply the "essential resemblance" concept (i.e., the factors, the test, the guiding principles, etc.). The TSUS concept of "essential resemblance" must therefore remain a relic of the TSUS.

The court understands the novel nature of the BKMY manufacturing process in creating a synthetic yarn from a molten slurry containing metal nanopowders; however, Plaintiff has failed to persuade the court that BKMY is correctly classified as "metalized yarn" under HTSUS heading 5605. The subject merchandise is correctly classified as women's trousers "of synthetic fibers" under HTSUS subheading 6104.63.20.

### III. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is denied, and Defendant's cross-motion for summary judgment is granted. Judgment will be entered accordingly.

                                                             /s/ Leo M. Gordon
                                                Judge Leo M. Gordon

Dated: May 29, 2020
      New York, New York